IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| **RONALD BROWN, #130144,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | NO. 1:23-cv-00058 |
| | ) | |
| **SHERIFF BUCKY ROWLAND,** | ) | JUDGE CAMPBELL |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

Before the Court is a pro se Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 3), filed by state inmate Ronald Brown over conditions during his incarceration at the Maury County Jail. The case is before the Court for ruling on Plaintiff's IFP application and initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. APPLICATION TO PROCEED IFP

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee, that application (Doc. No. 3) is **GRANTED** and a $350 filing fee is **ASSESSED**. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's

preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual

2

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff filed this action under Section 1983, which authorizes a federal suit against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. Accordingly, the Complaint must plausibly allege: (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Allegations and Claims**

Plaintiff is a 70-year-old, disabled inmate of the Bledsoe County Correctional Complex (BCCX), where he is serving a 43-year sentence imposed in 2003. (*See* Doc. No. 1 at 4, 6.) He alleges that, on June 10, 2023, when he was detained at the Maury County Jail on "[p]ending charges" following a June 7 "VOP" (presumably, violation of parole), he tripped and fell against the wall of his cell, breaking his left arm. (*Id.* at 4, 6; Doc. No. 1-1 at 1.) Approximately three hours later, he was taken to an outside clinic for an x-ray which revealed the broken bone. (Doc. No. 1 at 4.) He was given a temporary arm brace, scheduled for a follow up appointment at the clinic six weeks later, and returned to the Jail. (*Id.*; Doc. No. 1-1 at 1.) Plaintiff was given Tylenol and "some other pill" for pain at the jail, but no other medical attention. (Doc. No. 1-1 at 1.) On July 24, 2023, he was transferred to state custody. (*Id.*) Plaintiff claims that his constitutional rights were violated when the jail failed to provide further medical treatment or return him to the outside

clinic, instead "sen[ding] [him] to prison to avoid this." (*Id.* at 2.) He claims that the jail left him to endure mental and physical "pain and anguish" before transferring him to BCCX (*id.* at 1–2), and that in the meantime they put him on "max security" for "expressing [him]self," without charging him with any disciplinary violation. (Doc. No. 1 at 4–5; Doc. No. 1-1 at 1.)

Plaintiff sues Maury County Sheriff Bucky Rowland. The Complaint does not identify the relief Plaintiff seeks.

**C. Analysis**

For purposes of initial review, the Court presumes that Plaintiff was a pretrial detainee during his time at the Maury County Jail. *See Hanington v. Multnomah Cnty.*, 593 F. Supp. 3d 1022, 1032 (D. Or. 2022) (noting that circuit courts "have generally found that individuals arrested for suspected parole violations are pretrial detainees") (citing, *e.g.*, *Martin v. Warren Cnty., Ky.*, 799 F. App'x 329, 334, 337 (6th Cir. 2020)). As such, Plaintiff had a Fourteenth Amendment right to be free from deliberate indifference to serious medical needs. *See Hyman v. Lewis*, 27 F. 4th 1233, 1237 (6th Cir. 2022). To state a claim for a violation of this right, Plaintiff must allege that: (1) he had a sufficiently serious medical need; and (2) a defendant "acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty., Ky.*, 60 F. 4th 305, 317 (6th Cir. 2023) (internal citations and quotation marks omitted).

Even affording the Complaint a liberal construction and viewing its allegations in the light most favorable to Plaintiff, it does not support a plausible claim that Plaintiff's constitutional right to adequate medical care was violated at the Maury County Jail. The Complaint's allegations establish that Plaintiff was taken to an outside clinic for x-ray of his arm within three hours of injuring it; that the x-ray revealed a broken bone; and that the evaluation of that injury resulted in

4

the prescription of an arm brace and the scheduling of a follow up visit in six weeks' time. Then, upon arriving back at the Jail, Plaintiff was given two different medications to treat his pain. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law," unless "the medical attention rendered [is] so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). It cannot plausibly be claimed that the medical treatment Plaintiff received at the Jail, and at the clinic to which the Jail took him, left him in effectively the same condition as he would have been if no medical treatment had been rendered. In short, the three-hour delay in sending Plaintiff to the clinic was minimal, and the medical decisions to perform an x-ray, put him in a brace, and treat his pain with oral medications cannot be equated with ignoring his injury. Nor was the care provided suggestive of recklessness in the face of a known or obvious, unjustifiably high risk of suffering from his arm injury. Plaintiff's "desire for additional or different treatment [does not by itself] suffice to support [a constitutional] claim." *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018) (quoting *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017)). At best, the Complaint's allegations support a claim of medical negligence that is not cognizable under § 1983. *See Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim" under § 1983.).

Nor can it be claimed that the decision to send Plaintiff to BCCX around the time of his six-week follow up appointment violated his constitutional rights. To the extent that municipal authorities have any say in the timing of a re-arrested inmate's transfer to state custody after a parole or probation violation, the exercise of such discretion in order to avoid a follow up clinic

visit (rather than, say, a costly or imminently necessary surgery) simply cannot be said to violate the Constitution. *Cf. Develder v. Hirschler*, No. 2:09-CV-1803-EFB P, 2016 WL 319219, at *1–3 (E.D. Cal. Jan. 27, 2016), *report and recommendation adopted*, 2016 WL 1162671 (E.D. Cal. Mar. 24, 2016) (denying motion to dismiss where complaint alleged that defendant (1) knew of outside clinic's recommendation that prisoner needed immediate surgery to remedy painful condition and (2) scheduled that surgery, but (3) approved prisoner's transfer just prior to scheduled surgery, allegedly because of cost).

The Complaint also alleges that Plaintiff was put on "max security" sometime after his return from the clinic, either for "expressing [him]self" (Doc. No. 1 at 4–5) or "for no reason" (Doc. No. 1-1 at 1); that he was transferred to BCCX in retaliation for filing grievances (*id.*); and that he did not receive a phone call, mail, or reading materials at the Jail. (*Id.*) These bare assertions are not supported by sufficient factual matter to support a plausible claim to relief under § 1983 against any defendant who could properly be held liable. *Iqbal*, 556 U.S. at 678. The only Defendant named in the Complaint is the Maury County Sheriff. In the absence of any allegation that this Defendant was personally involved in any alleged misconduct,[1] the Complaint must be construed as suing him in his official capacity, which is tantamount to suing Maury County itself. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). Maury County can only be held liable if a county policy or custom was the "moving force" behind Plaintiff's injuries. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (citations omitted). The Complaint does not contain any reference to a policy or custom of Maury County that caused or contributed to Plaintiff's alleged injuries, nor is this pleading requirement satisfied by averring to conditions that

---

[1] The Court does not construe the isolated allegation that Defendant "ignored every response even grievance procedure" (Doc. No. 1 at 5) as demonstrating his personal involvement, particularly in light of the Complaint's other allegations, which can only be read as claiming Sheriff Rowland's responsibility as the official in overall command of the Jail.

6

Case 1:23-cv-00058    Document 4    Filed 04/30/24    Page 6 of 7 PageID #: 31

were, for whatever reason, allowed to obtain at the Jail. *See Bowers v. Livingston Cnty.*, 426 F. App'x 371, 372 (6th Cir. 2011) (affirming dismissal of claim against county because inmates did not identify a policy, but only "seem[ed] to argue" that an unofficial custom of tolerating jail conditions caused their injury).

In sum, the Complaint fails to state a claim upon which relief may be granted and will be dismissed on that basis.

### III. CONCLUSION

For the above reasons, this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted.

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE